EDWARD A. MULLEN, DEPUTY DIRECTOR OF THE DE-
PARTMENT OF PUBLIC SAFETY OF THE CITY OF HO-
BOKEN, AND THE MAYOR AND COUNCIL OF THE CITY
OF HOBOKEN, A MUNICIPAL CORPORATION, PROSECU-
TORS, v. AUGUST ZIEGENER, JUDGE OF THE COURT
OF COMMON PLEAS IN AND FOR THE COUNTY OF
HUDSON, WILLIAM H. GILFERT, CLERK OF SAID
COURT OF COMMON PLEAS, AND JOSEPH KIELY, DE-
FENDANTS.

Submitted October 10, 1945—Decided May 1, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *John J. Fallon.*

For the defendant Joseph Kiely, *Carey & Lane* (*Harry Lane* and *David A. Pindar,* of counsel).

The opinion of the court was delivered by

HEHER, J.   On May 11th, 1945, the defendant Kiely, a patrolman in the police department of the City of Hoboken, was convicted at a hearing before the Deputy Director of Public Safety of violations of departmental rules and regulations in two particulars, viz.: (a) failure to "report" a "known violation of the law;" and (b) "neglect of duty" as a patrolman in "failing to respond or take any action" when "notified by one Kent Gartner that he had been held up and robbed." He was dismissed from the department.

The charges of misconduct, preferred by a lieutenant of the police department, allege that the omissions occurred

on February 10th, 1945. On Kiely's appeal under *R. S.* 40:47–10, the charges were tried *de novo* in the Hudson Common Pleas, and the conviction was reversed as not warranted by the proofs. On prosecutors' motion, Kiely was ruled to show cause before the court *en banc* why a writ of *certiorari* should not issue to review the judgment of the Pleas; and it is now argued that the evidence sustains the charges, and that the Pleas erred in reversing the conviction. The issue is before us for final adjudication on the merits. The parties have stipulated that, if the court should decide to allow the writ, the question thus raised "shall be determined on the record" made "as if the proceedings had been brought up by a writ of *certiorari* and judgment may be entered accordingly."

*R. S.* 2:81–8 requires that there be a trial *de novo* in this court, notwithstanding such a trial was had in the Pleas. In such cases, the Pleas exercises the summary statutory jurisdiction only; and, at all events, this court is called upon to "review," on the facts as well as the law, the "dismissal" of the holder of a municipal office or position removable only for cause and after trial. *Vide, City of Plainfield* v. *McGrath,* 117 *N. J. L.* 348.

We find that the conviction is without substantial basis in the proofs. The essential facts in the main are not in dispute. On the day in question, while Kiely was engaged for a brief period in relief traffic duty at Washington and Newark Streets, in the municipality, two boys, Gartner and Aucock, ten and eleven years of age, respectively, hurried across the intersection as traffic, both vehicular and pedestrian, was heavy. It was Saturday, about noon, and children as well as adults were crossing the intersection in considerable number, many of them on their way to a theatre nearby. As Gartner and Aucock passed Kiely, the former said: "We have been robbed." Gartner testified that Kiely replied: " 'Run along, or something like that; I don't know.' " Aucock quoted Kiely as saying "we should go and play someplace else." Although he could not identify the boys, Kiely frankly acknowledged the incident the next day when interrogated by superior officers whose attention had been called to the mat-

ter by Gartner's father. He recalled the remark, "We have been robbed," as the boys "ran across" the intersection; and he said he replied: "Come on; hurry over here." The boys continued on, running, without further comment. Kiely then had traffic "stopped three ways for children and pedestrians to pass these corners," and he "waved the boys across the street," to "get traffic moving." He did not take the remark seriously; he considered it childish play. The boys agreed there was no mention of a holdup; they did not tell Kiely where or under what circumstances the robbery had occurred. As related on the witness stand, it did not take place at the intersection, but in an alley some distance away, out of the sight and hearing of the officer; and the perpetrator was a boy not much older than the victim. The amount taken was forty-five cents.

Plainly, this was not a violation of the law "known" to the officer within the intendment of the regulation. Evidently, in his mind there was no reasonable ground to suspect the commission of the robbery. What he said in reply clearly indicated that he did not consider Gartner's statement as seriously made; and the boys' failure to pursue the matter and dispel the known false impression thus conveyed served to confirm Kiely's interpretation of the remark as one made in jest. The boys are of average intelligence, at least, and their reaction to the policeman's response could not but dissipate any notion that a crime had in fact been committed. The experienced police officer has an understanding of child psychology and behaviorism that cannot be ignored in appraising his conduct in circumstances such as these. In the lexicon of youth, the not unfamiliar cry of "robbery" has a meaning and a use quite apart from its literal sense.

The charges import a careless, if not indeed an intentional, failure of duty; and the evidence is not adequate to sustain them. Viewed in the light of the particular circumstances, Kiely's conduct is altogether consistent with a conscientious effort to perform his full duty. *Vide, Morrow* v. *Somers Point,* 112 *N. J. L.* 291. He exercised an honest judgment that cannot reasonably be said to be tainted with culpable carelessness; and, such being the case, he is not subject to

discipline. He had been a police officer for nearly eight years. His service record was excellent. He had never before been charged with misconduct or a violation of departmental regulations; and the drastic nature of the disciplinary action is inexplicable on just grounds. This and the long delay in the presentation of the accusation (his superior officers learned of the incident and called for and received an explanation on the following day, but the charges were not served until May 3d) suggest an ulterior motivation.

The rule to show cause is discharged, with costs.